## STATE v. STEPHEN LEWIS' EXECUTORS.

High Court of Errors and Appeals. October 23, 1821.

*Ridgely's Notebook III, 532.*

*J. M. Clayton* for plaintiff in error.

*J. M. Clayton* reads record. This was a suit in the Supreme Court upon an administration bond. Judgment being obtained in that suit, a writ of *scire facias* was issued thereupon, and a verdict was taken thereon for the sum of £1500 damages, subject to the opinion of the Court on the following case stated. The judgment was by agreement that the merits of the case should be open on *scire facias*.

| | |
|---|---|
| The State of Delaware<br>*v.*<br>Robert B. M. and Leah his Wife, and Stephen Lewis, Executors of Stephen Lewis | *Scire Facias* |

It is agreed that the verdict in the above case shall be subject to the opinion of the Court upon the following case stated, in lieu of a special verdict.

Isaiah James, late of Kent County of Delaware, died intestate, leaving a widow named Mary James, and one child only, also named Mary James, him surviving. And after his death, to wit, on the 12 March, 1799, administration of all and singular the goods and chattels, rights and credits which were of the said Isaiah James, deceased, at the time of his death, was duly granted to the said Mary James, widow of the said Isaiah James, deceased, *prout* the record of the grant of said administration.

And upon the granting of said administration the said Mary James, widow, and Stephen Lewis as her surety, made and executed to the State of Delaware an administration bond by them respectively duly sealed with their seals and dates, the 12 March, 1799, *prout* the said bond and condition thereof. Afterwards, to wit, on the 17 November, 1800, the said Mary James, widow, administratrix as aforesaid, passed before Isaac Davis, Esq., the Register for the probate of wills, etc. an account of her administration, in which she charged herself with £3324.2.1½ being the amount of the inventory of the goods and chattels, rights and credits of the said deceased that had come to her hands as such administratrix, and on which account there appears an unappropriated balance of £2873.3.5½, *prout* the said account.

Afterward the said Mary James, widow, married Nathan Huff, and afterward, to wit, on the 26th day of April, 1802, the said Nathan Huff was duly appointed guardian of the aforesaid Mary James (child of said Isaiah James deceased, she the said Mary James, the child, then being an infant under the age of fourteen years) by the Orphans' Court in and for Kent County aforesaid, and gave bond with John Wood and Smith Fassett, his sureties, in the penalty of 10,000 dollars, *prout* the record of said appointment and said bond remaining in said court. Afterward, to wit, on February 22, 1805, the said Nathan Huff passed before Thomas Comerford, Register etc., an additional account of administration on the estate of the said Isaiah James, deceased, in which he charges himself with the aforesaid unappropriated balance with interest, *prout* the said account,[1] and afterward, to wit, on the 13 August, 1805, the said Nathan Huff passed before the said Thomas Comerford, Register, a farther additional account of his

---

[1] At this point, *Ridgely's Notebook III, 532,* the account of this case is interrupted; it is resumed at *541.*

administration on said deceased's estate in right of his wife in which he charges himself with divers sums, and among other things with the balance unappropriated on last account, and which account shows a balance of £3986.-14.3½, *prout* said account. And afterward, to wit, on the same day and year last aforesaid the said Nathan Huff passed before said Register a distributive account, by which there appears a distributive balance in favour of said Mary James, the child, of £2657.0.2½, *prout* the said account. And on the 6th August, 1810, the said Nathan Huff passed before Nathaniel Smithers, Register etc., an account of his guardianship of the said Mary James, the child, *prout* said account.

The said Mary James, the child, has married with and is now the wife of John Owens, named in the *scire facias,* she being at the time of her marriage an infant under the age of twenty-one years. A probate has been duly made and produced. Nathan Huff survived the said Mary James, the administratrix.

If upon the above case stated the Court shall be of opinion that there ought in point of law to be judgment for the plaintiff, then judgment shall be entered in due form pursuant to the verdict. If the Court shall be of opinion that upon the case above stated there ought in point of law to be judgment for the defendants, then judgment shall be rendered for the defendants in the same manner as if the verdict had been for the defendants.

It is agreed by the parties and their counsel respectively that the aforegoing case stated and this agreement shall be a part of the record in the same manner as if the same had been found by the jury as a special verdict; and that the opinion and judgment of the Court upon the case stated shall be liable to revision in the High Court of Errors and Appeals, and to this end that the aforegoing case stated and agreement shall be sent into the High Court of Errors and Appeals, if a writ of error shall be brought by either party, and there in the said High Court of Errors and Appeals be considered and deemed a part of the record.

(Signed) *Willard Hall* for plaintiff. *Thomas Clayton.*

At March Term, 1819, judgment was rendered by the Supreme Court for the defendant.

This cause was argued this day, October 23, in the High Court of Errors and Appeals, with the case of *Crockett v. Blackistone, Administrator of Ford,* and on the same ground, and was held

under consideration until December 1; the only difference between them being that in this, Huff, in right of his wife, had passed a distributive account, that is, an account stating or showing the distributive share of Mary, his wife, the widow of Isaiah James, the intestate, and the share of Mary, the child, in the sum of £3986.14.3½, the clear personal estate of the said intestate, but he had not charged himself with the ward's share thereof, nor in any manner shown that he as her guardian retained the same for or on her account.

In the guardian account passed by him August 6, 1810, he charged the ward, from January 7, 1801, to June 11, 1810, with $3582.44, principal and interest for maintenance and education; and he credited her with $3356.49 for rents and profits of her real estate, and interest from January 15, 1802 to June 11, 1810. She was not credited in any part of said account with her share of the personal estate.

The opinion of the Court was delivered this day, December 1, by THE CHANCELLOR. He said that this case did not differ from *Crockett v. Blackistone, Administrator of Ford*. The only variation of circumstances was that here a distributive account had been passed, which was nothing more than putting on paper the amount which the widow and child respectively were entitled to in the surplusage of the intestate's personal estate. That this distribution on paper was not a payment, nor a retainer by Huff, nor a charge against him. It only showed that the estate had been settled by the Register. It certainly could be no proof of payment, nor of anything else than showing the amount each heir is entitled to; otherwise it would frequently do great wrong to unpaid heirs. Huff has not mentioned that the money was held or retained by him for his ward. And in the guardian account passed August 6, 1810, nothing but rents and profits are accounted for. It is evident that Huff at no time intended to charge himself with his ward's share of the personal estate, particularly as there is a balance stated to be due to him on the guardian account of $225.95, which is not even credited by any part of the balance due to his ward of the personal estate.

Judgment reversed unanimously, and judgment rendered for the plaintiff.